**03/31/2008, U.S. District Court, S.D. Texas, Nancy JOHNSON, Plaintiff, v. The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., Defendants., 2008 WL 901526 (S.D.Tex.)**

**West Employee Benefits Cases**

# Nancy JOHNSON, Plaintiff, v. The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., Defendants., 03/31/2008

JOHNSON v. PRUDENTIAL INSURANCE COMPANY OF AMERICA

**Docket:** No. H-06-0130.

**Cite:** 2008 WL 901526 (S.D.Tex.)

**Court:** U.S. District Court, S.D. Texas

**Date:** 03/31/2008

**Judge:** LEE H. ROSENTHAL , District Judge.

[*pg. 1]

The plaintiff, Nancy Johnson, filed this ERISA suit to recover long-term disability benefits under the Enterprise Companies Incorporated Employee Benefit Plan ("The Plan"). The Plan is an employee welfare benefit plan funded by a policy issued by The Prudential Insurance Company of America (" Prudential"). Johnson sued Prudential, the Plan, and her former employer, the Enterprise Products Company, after the long-term benefits she had received were terminated effective April 1, 2005. Johnson had received the benefits based on back injuries that led to two cervical fusion surgeries. Following the denial, Johnson filed an administrative appeal, which was unsuccessful, then filed this suit.

After this case was filed, the defendants moved for summary judgment. After further exchanges with Johnson and hearings with the court, the parties agreed to an abatement to permit additional administrative appellate review. The administrative review led the Plan to reverse the decision denying Johnson's claim and to reinstate her long-term disability benefits. Johnson has filed a motion to recover

the attorney's fees she incurred in obtaining this result. (Docket Entry Nos. 24, 28). The defendants argue that Johnson is not entitled to recover attorney's fees and have filed a motion for summary judgment on the ground that this suit is moot as a result of her success in the second administrative appeal. (Docket Entry Nos. 25, 26, 29).

Based on a careful review of the record, the motions, and the applicable law, this court grants the defendants' summary judgment motion on the basis of mootness and finds that Johnson is entitled to recover attorney's fees and costs. Her motion for an oral hearing is denied as moot. The reasons for these rulings are stated below.

**I. Background**

Under the Plan, an employee is "disabled" if she is unable to perform the material and substantial duties of her regular occupation due to sickness or injury and she has a 20% or more loss in her indexed monthly earnings due to that sickness or injury. After 24 months of receiving payments, an employee is "disabled" if due to the same sickness or injury she is unable to perform the duties of any gainful occupation for which she is reasonably fitted by education, training, or experience.

Johnson had worked as an industrial buyer, a sedentary position. In May 2004, Johnson submitted a claim for long-term disability benefits under the Plan based on back injuries that led to a cervical fusion surgery, which was unsuccessful and had to be followed by a second cervical fusion surgery. In July 2004, Prudential approved Johnson's claim for long-term disability benefits. (Docket Entry No. 11, Ex. D-2). In March 2005, the Plan told Johnson by letter that she was no longer eligible to receive long-term benefits under the Plan. (*Id.,* Ex. D-4). The letter stated that the denial was based on a review of Johnson's medical files. The letter stated that "[g]iven your recovery to date, and your abilities demonstrated during physical therapy sessions, and there isn't any medical evidence that would preclude you from being unable to perform seated work duties with the assistance of a sit/stand work station and the freedom to adjust your positioning at will when needed."(*Id.* ) The letter told Johnson that she had "the right to appeal this decision" and advised that any appeal should set out the reasons for her disagreement with the determination and include supporting medical evidence or documentation. (*Id.* ) The letter stated that "[i]f our decision to deny benefits is upheld at the first level of appeal, you or your authorized representative may file a second appeal."The letter also stated that "[a]fter completion of the first level of appeal, you may also file a lawsuit under the Employee Retirement Income Security Act (ERISA) .... Your decision on whether to file a second appeal will not affect your rights to sue under ERISA."(*Id.* ) [*pg. 2]

On April 5, 2005, Johnson appealed the benefit denial. Johnson's treating doctor, Howard Cotler, sent Prudential a letter dated April 6, 2005, stating that Johnson was unable to return to work because of her multiple surgeries and back injuries. (Docket Entry No. 11, Ex. E). In a letter dated May 3, 2005, Prudential informed Johnson that her appeal had been denied. (Docket Entry No. 11, Ex. D-7). The letter stated that the denial was based on a review of Johnson's medical files and the documents submitted for the appeal, including Dr. Cotler's letter. (*Id.* ) The letter summarized Prudential's findings:

The records in your file indicate that you developed neck pain and underwent cervical fusion on March 31, 2004. You then developed pseudoarthritis, and there was evidence of non-union of your fusion. You underwent another cervical fusion on July 21, 2004. Despite surgery, you reported ongoing pain.

You received physical therapy following surgery. As of October 25, 2004, you were released from physical therapy and were advised to attend aquatherapy. At that time, the records indicate that you had a low level pain following your treatment. Your gait was noted to be normal and your manual muscle testing was normal in all extremities. You were noted to have 50% range of motion in your cervical spine, which is expected following cervical fusion. Our medical staff noted that the records only document tenderness and stiffness in your cervical spine, and opined that aquatherapy was most likely suggested for general conditioning.

You saw Dr. Cotler on January 20, 2005, and he advised you to perform home exercises. You also had an x-ray on January 20, 2005, which demonstrated solid arthrodesis in the cervical region. There was no noted motion over the instrumented segment of your spine.

By March 1, 2005, Dr. Cotler's office notes indicated that you had no spasm of the cervical spine. It was also noted that you had a normal motor and sensory examination at that time. An MRI performed in March 2005 indicated that there was no evidence of junctional disc disruptions.

Dr. Cotler submitted a letter dated April 6, 2005, indicating that you should remain out of work due to multiple surgeries and continued complaints of pain. However, the available records do not support an inability to perform all work.

Although you have continued to report ongoing pain, you have been noted to be on minimal pain medications. This is inconsistent with what would be expected for impairing pain. If your pain was severely impairing, one would expect higher doses of pain medication or attendance in a pain management program. It is also reasonable to expect that you would be continuing in therapy.

Our medical staff noted that normal duration for cervical fusion would typically be three to six months. As of March 2005, you were more than seven months post-surgery, and imaging studies from January and March 2005 demonstrated solid fusion and no significant findings. You were advised to see Dr. Cotler as needed. This is also not consistent with severely impairing symptoms. [*pg. 3]

Our medical staff noted that your treatment is not of an intensity that would support your reports of impairing symptoms. The diagnostic testing does not support a condition that would produce restrictions and limitations that preclude all work.

Our medical staff noted that it would be reasonable for you to perform seated work with the ability to change positions, including intermittent walking and standing. It would also be reasonable that you could lift up to ten pounds to waist level with occasional lifting up to shoulder level. You would be precluded from performing overhead lifting.

(*Id.* ). The letter told Johnson that she could "again appeal this decision to Prudential's Appeals Review

Unit for a final decision" but "that this second appeal is voluntary."(*Id.* ). The letter stated that "[s]ince you have now completed the first level of appeal, you may file a lawsuit under the Employee Retirement Income Security Act (ERISA).... Your decision on whether to file a second appeal will not affect your rights to sue under ERISA."(*Id.* ).

Johnson elected not to pursue a second appeal. She filed this suit in state court on November 28, 2005. (Docket Entry No. 1). The defendants timely removed. On March 30, 2006, the Social Security Administration sent Johnson a Notice of Decision letter informing her that she qualified for Social Security Disability Benefits. (Docket Entry No. 11, Ex. F). In a letter to Johnson's attorney dated July 21, 2006, Prudential's counsel stated that "your client, Nancy Johnson, may be entitled to an additional administrative review of her claim for Long Term Disability Benefits ."(Docket Entry No. 25, Ex. A). The letter suggested "that the ... litigation be abated so that further review of Ms. Johnson's claim may be conducted" and that Johnson submit "any materials submitted to the Social Security Administration in connection with her claim for Social Security Disability Benefits."(*Id.* ) Prudential's counsel again raised the possibility of an additional administrative appeal in an October 18, 2006 telephone conversation with Johnson's attorney and a November 28, 2006 letter. (Docket Entry No. 25 at 4 and Ex. B).

The defendants moved for summary judgment on January 18, 2007. (Docket Entry No. 9). Johnson requested additional time to conduct discovery and respond to the summary judgment motion, stating that she was considering Prudential's suggestion to abate the suit to pursue an additional administrative appeal. (Docket Entry No. 11). At a hearing held on February 28, 2007, Prudential and Johnson agreed to an abatement to allow an additional administrative review that would include the Social Security Administration Notice of Decision and updated medical records. The defendants withdrew the pending motion for summary judgment without the need for Johnson to file a response. The case was abated until June 28, 2007. (Docket Entry No. 17).

On May 3, 2007, Prudential reversed its denial of Johnson's claim and reinstated her long term disability benefits. (Docket Entry No. 25, Ex. C). The reversal was based on an external physician's review of Johnson's medical file. The file consisted of what Johnson had previously submitted, supplemented by updated medical records from Dr. Cotler and a copy of the March 30, 2006 Notice of Decision letter from the Social Security Administration. The physician-reviewer stated that: [*pg. 4]

The claimant will be severely restricted in her abilities due to the multiple surgical procedures that were performed. She is unable to stand for more than 30 minutes at a time due to severe stenosis, and is unable to walk more than 10-15 minutes before needing to sit. She is unable to sit for more than 1 hour at a time, continuing this way for 4 hours at a time with needing to be in a supine position for 30 minutes every 4 hours. It is unlikely that she can carry more than 10 pounds, or reach or lift anything more than 10 pounds. There is no evidence that she cannot perform repetitive and fine motor hand activities. These restrictions are likely to be permanent.

The medical records indicate a severe impairment, based the natural sequela of these types of treatment. This claimant had a three level surgical fusion, which leads to significant impairments over

50% of the time. The claimant has significant junctional lumbar stenosis, which occurs 10 25% of the time after global lumbar fusions. Further treatment does not appear to be required, as per the treating physicians notes. The symptoms are likely to be permanent, and improvement is not likely. The etiology of her chronic pain is unclear, but is not uncommon following these procedures. The claimant has significant complaints of chronic pain, which may be related to the failures of her surgeries. Limited range of motion is the dominant finding. Diagnostic testing shows a healed fusion, but the junctional stenosis is also noted.

(*Id.,* Ex. C at 2). The letter informing Johnson of the reversal stated that "[b]ased on the physician-reviewer's opined restrictions and limitations, Ms. Johnson has less than sustained sedentary functional capacity. As such, Ms. Johnson is entitled to additional benefits and her LTD claim is being reinstated."(*Id.* at 3). The letter does not refer to the Social Security Administration's decision or to Johnson's medical records that had not been previously submitted.

**II. The Summary Judgment Motions**

**A. The Legal Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c) ."The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."*Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986) ).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by " 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *See Celotex,* 477 U.S. at 325 . While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.*Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005) (citation omitted). " 'An issue is material if its resolution could affect the outcome of the action.' " *DIRECTV, Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir.2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.,* 340 F.3d 233, 235 (5th Cir.2003) ). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.,* 308 F.3d 451, 471 (5th Cir.2002) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). [*pg. 5]

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 301 (5th Cir.2004) (citation omitted)."This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of

evidence.' " *Little,* 37 F.3d at 1075 (internal citations omitted).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255 (citation omitted)."Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."*Celotex,* 477 U.S. at 322 .

**B. Analysis**

The defendants argue that they are entitled to summary judgment on Johnson's claim for denial of long-term disability benefits because Prudential reversed its earlier denial of Johnson's claim, paid her $31,077.69 in back benefits from April 1, 2005 through May 21, 2007, and agreed to pay her $1,467.00 per month in future long-term disability benefits. (Docket Entry No. 26). The defendants argue that they are entitled to summary judgment because "no outstanding benefits are due." (Docket Entry No. 26 at 4). Johnson responds that she is entitled to summary judgment on the basis that Prudential abused its discretion when it denied her benefits claim from April 1, 2005 to May 31, 2007. (Docket Entry No. 27 at 8).

Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies." U.S. CONST. art. III; *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 395 (1980) . A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."*Id.* at 396 (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969) )."A defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice."*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),* 528 U.S. 167,170 (2000)."[T]he standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."*Id.*

Several courts have held that when, as here, a plan or insurer reverses a benefits denial that led to an ERISA lawsuit, the ERISA action is moot. *See Schaffer v. Prudential Ins. Co. of Am.,* 301 F.Supp.2d 383, 385 (E.D.Pa.2003) (stating that an ERISA action becomes moot when it is resolved through administrative review); *Boyadjian v. CIGNA Cos.,* 973 F.Supp. 500, 503 (D.N.J.1997) (finding that the plaintiff's claim for pension benefits under ERISA was moot after the defendants determined that the plaintiff was entitled to pension benefits); *Alba v. Upjohn Co.,* No. 95-12788-JLT, 1997 WL 136334, at [*pg. 3] (D. Mass Feb. 21, 1997) (finding that a claim for ERISA benefits was moot because the defendant had determined that the plaintiff was eligible to receive benefits); *Davis v. E.I. Du Pont de Nemours and Co.,* 176 F.R.D. 224, 226 (W .D. Va.1997) ("Should the plan administrator reverse the previous decision, as was the case here, the ERISA claim becomes moot."). The same result applies here. [*pg. 6]

Both parties have moved for summary judgment on the ERISA claim. The defendants' summary judgment motion is granted on the basis that Johnson's claim for disability benefits is moot. Johnson's

motion is denied on the same basis. This ruling does not, however, preclude an examination of the merits of Johnson's claim as necessary to determine her entitlement to attorney's fees and costs.

**III. Attorney's Fees and Costs**

ERISA provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." **29 U.S.C. § 1132(g)(1)** . A motion for attorney's fees requires a two-step analysis. *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1459 (5th Cir.1995) . First, the court must determine whether the party is entitled to attorney's fees by applying the five factors enumerated in *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980) .*Todd,* 47 F.3d at 1458-59 . The factors are: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether a fee award would deter other persons acting under similar circumstances; (4) whether the party seeking fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant question regarding ERISA itself; and (5) the relative merits of the parties' positions. "[W]hen considering a request for attorney's fees under **§ 502(g) of ERISA** , the court should consider and explicate the five *Bowen* factors, and should do so without giving predominance or preclusive effect to any one of them; and the court should also consider relevant non-*Bowen* factors, if there are any."*Riley v. Adm'r of Supersaver 401K Capital Accumulation Plan for Employees of Participating AMR Corp. Subsidiaries,* 209 F.3d 780, 782-83 (5th Cir.2000) .

If the court determines under the five-factor *Bowen* test that a party is entitled to attorney's fees, the lodestar method is then used to determine the amount to be awarded. *Wegner v. Standard Ins. Co.,* 129 F.3d 814, 822 (5th Cir.1997) ; *Todd,* 47 F.3d at 1459 . Under this method, the court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, multiplying the figures to arrive at the "lodestar." *Wegner,* 129 F.3d at 822; *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.1995) . The lodestar is then adjusted upward or downward after assessing the factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717-19 (5th Cir.1974) . **1** *See Kellstrom,* 50 F.3d at 329 . " '[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel.' " *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 800 (5th Cir.2006) (quoting *Migis v.. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998) ). The lodestar may not be adjusted for a *Johnson* factor, however, if the lodestar amount already took that factor into account; to do so would be impermissible double-counting. *Id.* In determining the fee amount under the lodestar analysis, "[t]he most critical factor in determining an attorney's fee award is the degree of success obtained. Prevailing party status may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Saizan,* 448 F.3d at 799 (quotations and footnotes omitted); *see also Washington v. Phila. County Court of Common Pleas,* 89 F.3d 1031, 1042 (3d Cir.) (it is a "settled principle ... that counsel fees should only be awarded to the extent that the litigant was successful"). If "a plaintiff has achieved only partial or limited success," the lodestar "may be an excessive amount. This will be true even when the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley v. Eckerhart,* 461 U.S. 424,

436 (1983) . "There is no precise rule or formula for making these determinations," and if the court makes a downward adjustment for partial success, it "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. [*pg. 7]

The Fifth Circuit has held that the standard for determining whether a party should be awarded attorney's fees in an ERISA suit is different from the standard for determining whether the party is entitled to costs. *See Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan,* 493 F.3d 533, 542 (5th Cir.2007) (reviewing Fifth Circuit decisions and holding that different standards apply to determining attorney's fees and determining costs); *Hobbs v. Baker Hughes Oilfield Operations, Inc.,* No. V-06-97, 2008 WL 619419, at[*pg. 2] (S.D.Tex. March 3, 2008) ("[C]ourts in the Fifth Circuit should employ a bifurcated approach to awarding attorney's fees and costs pursuant to **29 U.S.C. § 1132(g)(1)** ."). In *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan,* 493 F.3d at 543, the Fifth Circuit held that rather than looking to the *Bowen* factors, a court should apply a"prevailing party" test for the award of costs under ERISA. The court acknowledged that previous Fifth Circuit panels had offered conflicting guidance as to the proper standard for awarding costs in an ERISA case. *Id .* at 542. *The Wade* court pointed out that more recent Fifth Circuit opinions used the five-factor *Bowen* test to determine whether to award costs as well as fees, but recognized that an earlier panel opinion, *Salley v. E.I. DuPont de Nemours & Co.,* 966 F.2d 1011 (5th Cir.1992) , used the five-factor *Bowen* test only to determine fees and had assessed costs based on the "prevailing party" test. *Id.* at 542.The *Wade* court held that *Salley* controlled because it was the first panel decision to address the award of costs under ERISA. *Id.* at 542-3.

"[T]he definition of 'prevailing party' does not differ from rule-to-rule or statute-to-statute."*Schultz v. United States,* 918 F.2d 164, 166 n. 2 (Fed.Cir.1990) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7 (1983) ). To qualify as a prevailing party, "the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement."*Walker v. City of Mesquite,* 313 F.3d 246, 249 (5th Cir.2002) ."The touchstone of the prevailing party inquiry ... is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."*Sole v. Wyner,* 127 S.Ct. 2188, 2194 (2007) (quoting *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792-793 (1989) ).FN2

FN2. In *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 121 S.Ct. 1835 (2001) , the Supreme Court concluded that "prevailing party" did not include "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."*Id.* at 1838. Courts have held that *Buckhannon* does not foreclose an attorney's fee award for a party who prevails in an administrative hearing by obtaining favorable orders following administrative adjudication. *See, e.g., Antonio ex rel. Mother v. Boston Public Schools,* 314 F.Supp.2d 95, 99 (D.Mass.2004) ("Post-*Buckhannon* case law continues to support the premise that a plaintiff can

achieve prevailing party status at an administrative level and therefore be entitled to attorneys' fees and costs."); *S.W. ex rel. N.W.v. Bd. of Educ of the City of New York (Dist.Two),* 257 F. Supp .2d 600, 603 (S.D.N.Y.2003) ; *M.S. v. New York City Bd. of Educ.,* Nos. 01 Civ. 4015(CBM), 01 Civ. 10871(CBM), 01 Civ. 10872(CBM), 2002 WL 31556385, at[*pg. 2] (S.D.N.Y. Nov. 18, 2002) .

*1. Attorney's Fees*

The evidence does not show that Prudential acted in bad faith in terminating Johnson's benefits. Prudential's letters terminating Johnson's benefits and denying her first appeal explained what evidence in Johnson's medical records supported the finding that Johnson was not considered "disabled" from all work. Prudential told Johnson that she had the right to further administrative review after her first appeal was unsuccessful. After Johnson filed suit, and after she received a decision from the Social Security Administration that she was permanently disabled, Prudential sent her attorney letters encouraging an additional appeal. (Docket Entry No. 25, Exs. A, B). [*pg. 8]

The record does, however, support a finding of culpability. *See Tedford v. Benchmark Ins. Co.,* No. 01-10995, 2002 WL 1860276, at[*pg. 3] (5th Cir. June 17, 2002) (stating that the "bad faith" and "culpability" inquiry are distinct inquiries under the "disjunctive" first *Bowen* factor). Culpable conduct includes conduct that is blameworthy, censurable, careless, at fault, or involves the breach of a legal duty, although a "party is not culpable merely because it has taken a position that did not prevail in litigation."*Anderson v. Unum Life Ins. Co. of Am.,* No. 2:01cv894-ID, 2007 WL 604728, at[*pg. 3] -4 (M.D.Ala. Feb. 22, 2007) (citing *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.,* 33 F.3d 253 (3rd Cir.1994) ; *see also Wright v. Hannah Steel Corp.,* 270 F.3d 1336, 1345 (11th Cir.2001) .

Prudential denied Johnson's long-term disability benefits and, after she sued, reversed the decision based on the same record, with only limited additional information. Prudential denied Johnson's first appeal despite the extensive medical records she submitted showing her injury, a first failed surgical fusion, a second surgical fusion, and a statement from her treating doctor about the pain and limits Johnson suffered. It appears from the record that limited additional information was submitted in the second administrative appeal after the lawsuit was filed. The major new information was the fact that the SSA had found Johnson disabled. The second administrative appeal also included updates of Johnson's medical records, but these were from the same treating doctor whose statement had been found insufficient in the first appeal. The statement of the physician-reviewer in the second administrative appeal does not refer to the newly submitted evidence. The evidence cited by the physician-reviewer as supporting a finding of disability, including the nature of Johnson's surgeries and treatment, her physician's notes about her condition and recovery, her reported pain, and her limited range of motion, was also referred to in the May 3, 2005 letter denying Johnson's first appeal. (Docket Entry No. 11, Ex. D-7; Docket Entry No. 25, Ex. C). The evidence included that Johnson had "junctional lumbar stenosis," which was in the record submitted to Prudential in the first review and first administrative appeal. The reversal of the denial in the second administrative appeal appears to be the result of a more thorough review of the same evidence that was available in the first administrative appeal, updated to show more of the same type of medical treatment Johnson had received before the

denial, and to include the SSA disability decision.

The defendants are "culpable" for denying the first administrative appeal on the basis of much of the same information that they admitted on the second administrative appeal showed a basis for continuing to pay the benefits, meeting the first *Bowen* factor. In these circumstances, a fee award would have some deterrent effect, satisfying the second *Bowen* factor. The third and fourth factors are also met; Johnson succeeded in overturning the termination of her benefits, and Prudential would be able to satisfy an award. The fifth *Bowen* factor does not support an award, because this suit did not seek to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant question regarding ERISA itself. Taken together, the *Bowen* factors lead to the conclusion that attorney's fees are appropriate in this case. [*pg. 9]

The defendants argue that "this lawsuit was unnecessary" because the defendants offered to conduct an additional administrative appeal. (Docket Entry No. 30 at 2). But the letter Prudential sent Johnson rejecting her first appeal specifically noted the voluntary nature of the second appeal, stated that she could file a lawsuit under ERISA, and stated that her "decision on whether to file a second appeal will not affect your rights to sue under ERISA."(Docket Entry No 11, Ex. D-7). This letter was the second time that Prudential had told Johnson that it had conducted a full and comprehensive review of her medical records and found that they did not show that she was "disabled" under the Plan. The letter denying the first administrative appeal informed Johnson that Prudential did not find her statements about the pain she was experiencing to be credible because they were not consistent with her treatment regime. The fact that Johnson declined to pursue an additional administrative appeal in these circumstances and instead elected to file suit does not show that she abused the litigation process and should not receive the fees she incurred. The fact that Johnson continued to pursue litigation even after the defendants learned of the SSA decision finding her disabled and invited her to pursue a second administrative appeal did not show bad faith on her part, particularly given that the fact of the SSA decision did not entitle her to have the defendants find her disabled under the Plan.

The defendants point to several cases holding that the ERISA fee and cost-shifting provision, **29 U.S.C. § 1132(g)(1)** , does not permit an award for fees or costs incurred during an administrative appeal. The defendants cite *Cann v. Carpenters' Pension Trust Fund for Northern California,* 989 F.2d 313, 315 (9th Cir.1993) , holding that section 1132(g)(1) limits awards to fees and costs "incurred in the litigation in court" and that the plaintiff could not recover fees or costs incurred in administrative proceedings before filing suit. The defendants also cite *Anderson v. Procter & Gamble Co.,* 220 F.3d 449, 456 (6th Cir.2000) , holding that "ERISA does not authorize recovery of attorneys' fees for work performed during the administrative exhaustion phase of a benefits proceeding."

The courts agree that the fees and costs incurred during administrative proceedings before suit is filed are unavailable under section 1132(g)(1) .*See Hahnemann University Hosp. v. All Shore, Inc.,* 514 F.3d 300, 313 (3d Cir.2008) ; *Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1010-11 (8th Cir.2004) ; *Rego v. Westvaco Corp,* 319 F.3d 140, 150 (4th Cir.2003) ; *Peterson v. Cont'l Cas. Co.,* 282 F.3d 112, 119-21 (2d Cir.2002) . These decisions rest on the opening phrase of section 1132(g) , "[i]n

any action," as limiting fees and costs to those incurred in litigation. Courts have also found, however, that ERISA permits an award of fees and costs incurred in administrative proceedings that take place on court-ordered remand after initial administrative remedies are exhausted and litigation is underway. *See Peterson,* 282 F.3d at 119-21; *Delisle v. Sun Life Assur. Co. of Canada,* No. 06-11761, 2007 WL 4547884, at[*pg. 5] (E.D.Mich. Dec. 19, 2007) ; *Seal v. John Alden Life Ins. Co.,* 437 F.Supp.2d 674, 676 (E.D.Mich.2006) . In *Peterson,* the court stated that: [*pg. 10]

the text and legislative history indicate that once a court of law has assumed jurisdiction over a suit, all costs incurred may be shifted by a court to one party. The fact that a court orders additional fact finding or proceedings to occur at the administrative level does not alter the fact that those proceedings are part of the "action" as defined by ERISA. Where the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during the pendency of the administrative proceedings, we hold that ERISA authorizes the award of associated costs.

282 F.3d at 119-21; *accord Delisle,* 2007 WL 4547884, at[*pg. 5] (holding that "fees incurred in ERISA remand proceedings can be recovered when the district court retains jurisdiction over the matter."); *Seal,* 437 F.Supp.2d at 676 (finding that "the district court has discretion to award attorney fees under **29 U.S.C. 1132(g)(1)** for proceedings conducted by a plan administrator pursuant to an order of remand to consider information after the suit has been filed.").

In this case, Johnson is entitled to fees and costs incurred in connection with the filing and prosecution of this suit in court. She is not entitled to the fees and costs she incurred in connection with the prelitigation administrative appeals. Under the *Bowen* factors and the lodestar, it is appropriate to award her fees for the postlitigation administrative proceedings. Those proceedings took place after she filed suit, to permit the plan administrator to consider additional information and to reconsider the decision to deny benefits. This court did not order the parties to remand the case so that the plan administrator could conduct further review or additional fact-finding, because the parties voluntarily agreed to a remand for a second administrative appeal. The cases do not specifically address whether a voluntary abatement of litigation to pursue administrative review, as opposed to a court-ordered remand, justifies an award of the fees incurred in that administrative review. The cases do recognize that fees are generally available for administrative reviews that occur after litigation has begun. In the circumstances present here, in which the plaintiff filed suit after the defendants twice denied her benefits, and in which the defendants had to undertake a second administrative appeal before agreeing to pay the Plan benefits, fees for that postlitigation administrative appeal are appropriate.

The $250 hourly rate charged by Johnson's attorney is reasonable. The reasonable number of hours expended include those incurred preparing the original petition, those incurred between the filing of the petition and the abatement, and those incurred in the preparation of the fee application, which total 91.75 hours. *See Big R Food Warehouses v. Local 338 RWDSU,* 896 F.Supp. 292, 299 (E .D.N.Y.1995) ("While work done in preparation of attorney's fees is compensable, such fees must be reasonable."). The Johnson factors do not warrant further adjustment. *Johnson* is entitled to recover $27,662.50 in attorney's fees.

*2. Costs* [*pg. 11]

Johnson is entitled to an award of costs as a "prevailing party." The reinstatement of Johnson's benefits was not the product of voluntary action by the defendants. Rather, Johnson had to file suit and then undergo a second administrative appeal before the defendants reversed their denial and reinstated her benefits. Johnson received relief based on the merits of her claim through the administrative appeals process. This relief materially altered the legal relationship between the parties and changed the defendants' behavior in a way that directly benefitted the plaintiff. *Antonio,* 314 F.Supp.2d at 99 . Johnson is entitled to her costs.

**IV. Conclusion**

The defendants' summary judgment motion is granted, and Johnson's denied, on the basis of mootness. Johnson's motion for attorney's fees and costs is granted. Johnson is entitled to fees in the amount of $27,662.50 and costs in the amount of $566.12 for filing and prosecuting this suit, up to the point of abatement for the administrative proceedings and including the preparation of the fee application.

Final judgment will be separately entered.

S.D.Tex.,2008.

Johnson v. Prudential Ins. Co. of America

Slip Copy, 2008 WL 901526 (S.D.Tex.)

**1** In *Johnson v. Georgia Highway Express, Inc.,* the Fifth Circuit laid out the factors that a court should consider in determining whether to adjust the lodestar, including: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. 488 F.2d 714, 717-19 (5th Cir.1974) .

© 2018 Thomson Reuters/West

© 2018 Thomson Reuters/Tax & Accounting. All Rights Reserved.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OMEGA HOSPITAL, LLC | CIVIL ACTION |
| VERSUS | NO: 14-2264 |
| COMMUNITY INSURANCE COMPANY | SECTION: J(4) |

**ORDER AND REASONS**

Before the Court is a motion styled *Rule 72(A) Objections to Magistrate's Order* **(Rec. Doc. 126)** filed by Plaintiff Omega Hospital, L.L.C. ("Omega") and an opposition thereto (Rec. Doc. 129) filed by Defendant Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield ("CIC"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED.**

**PROCEDURAL AND FACTUAL BACKGROUND**

This matter derives from a discovery dispute between Omega and CIC. (Rec. Doc. 121.) A patient insured by CIC underwent a mastectomy at Omega Hospital. Omega alleges that CIC verified the patient's benefits and granted pre-certification before the procedure. (Rec. Doc. 1-1, at 3-4.) However, after the surgery, CIC refused to pay Omega's claims. *Id.* at 4. Omega contends that CIC is liable to Omega for $74,000. *Id.*

In March of 2015, CIC sought to depose Omega under Federal Rule of Civil Procedure 30(b)(6). (Rec. Doc. 23-1, at 2.) Pursuant to the deposition notice, Omega designated Debbie Schneck ("Ms. Schneck") as its corporate representative. (Rec. Doc. 36, at 2.) Ms. Schneck was the Hospital Administrator and was responsible for the operation of the hospital. (Rec. Doc. 121, at 2.) The first date selected for the deposition was April 21, 2015, but Omega's counsel had a conflict on that date. (Rec. Doc. 23-1, at 2.) Next, CIC's counsel suggested April 24, but Ms. Schneck was scheduled to have surgery that day. (Rec. Doc. 23-4, at 2.)

The parties could not agree on a date, and Omega did not respond to CIC's suggestion that it designate another representative. (Rec. Doc. 23-1, at 2.) Accordingly, CIC requested a discovery conference. *Id.* At the conference on March 26, the parties agreed to schedule the deposition before Ms. Schneck's surgery, on April 13. *Id.* But on April 12, Omega's counsel emailed CIC's counsel and cancelled the deposition because Ms. Schneck was ill and in pain. *Id.* On April 28, CIC filed a Motion to Compel Corporate Deposition of Omega Hospital, requesting that the Magistrate require Omega to designate another representative to be deposed. (Rec. Doc. 23.) On May 14, Magistrate Judge Karen Roby granted the motion and ordered that

Case 2:14-cv-02264-CJB-KWR Document 130 Filed 09/24/15 Page 3 of 11

the deposition would occur on or before the discovery deadline of June 15 with a qualified corporate representative. (Rec. Doc. 36, at 5.)

On June 10, five days before the close of discovery, Omega filed a Motion for Relief from Discovery Order and to Continue Discovery Deadline. (Rec. Doc. 52.) In the motion, Omega argued that Ms. Schneck would not be able to testify because she was taking narcotic pain medication due to her use of a device that assisted with recovery from knee surgery but caused extreme pain. (Rec. Doc. 121, at 3.) Judge Roby denied Omega's motion, clarifying that Omega was obligated to designate a qualified and prepared corporate representative for the deposition. *Id.* It was not required to present Ms. Schneck. *Id.* Further, the judge ordered Omega to produce a qualified representative for the deposition no later than June 30. *Id.*

Subsequently, Omega designated two corporate representatives, Shawna Johnson ("Ms. Johnson") and Angela Maher (Ms. Maher"), for deposition on Thursday, June 25. *Id.* At the deposition, the designated representatives were unable to answer questions based on the topics noticed by CIC's counsel. *Id.* That same afternoon, Omega's counsel emailed CIC's counsel, offering to designate another representative for a third deposition on the following Monday morning. (Rec. Doc. 103-5, at 2.) Omega's

Case 2:14-cv-02264-CJB-KWR Document 130 Filed 09/24/15 Page 4 of 11

counsel later clarified that it would designate Ms. Schneck as its representative and that the deposition would be conducted via Skype. (Rec. Docs. 103-6, 103-8.) CIC's attorneys were not available to conduct the deposition because of the short notice. (Rec. Doc. 103-7.) They also objected to the virtual deposition, arguing that they were entitled to take the deposition in person. *Id.*

On July 28, CIC filed a Motion for Sanctions based on Omega's noncompliance with the Court's May 14 order compelling discovery. (Rec. Doc. 103.) Before the Court decided the motion, Omega filed a Motion to Dismiss (Rec. Doc. 112) on the grounds that the cost of pursuing the claim outweighed its value. (*See* Rec. Doc. 121, at 4.) The Court granted the motion but retained jurisdiction over CIC's Motion for Sanctions. (Rec. Doc. 116.) On August 19, Judge Roby granted CIC's motion, ordering Omega to pay attorneys' fees and costs for the June 25 deposition and the preparation of the Motion for Sanctions. (Rec. Doc. 121, at 9.)

Pursuant to the Court's order, CIC filed a Motion for Attorney Fees on September 2. (Rec. Doc. 123.) Omega filed its objections to the Magistrate's order in this Court on September 8. (Rec. Doc. 126.) On September 23, CIC filed an opposition. (Rec. Doc. 129.)

Case 2:14-cv-02264-CJB-KWR Document 150 Filed 09/24/15 Page 5 of 11

## LEGAL STANDARD

A magistrate judge's ruling on a nondispositive motion may be appealed to the district court. Fed R. Civ. P. 72(a). When objections are raised to such a motion, the district judge must consider them timely and "modify or set aside any part of the order that is clearly erroneous or contrary to law." *Id.* Under this standard, a magistrate judge's decision must be affirmed unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

When a party disobeys a court order to provide or permit discovery, the court may sanction the party. Fed. R. Civ. P. 37(b)(2)(A). The sanctions may consist of:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* Alternatively or in addition, the court must order the disobedient party, his attorney, or both to pay reasonable expenses and attorney fees incurred because of the noncompliance. Fed. R. Civ. P. 37(b)(2)(C). However, the disobedient party can avoid sanctions by showing that the failure was "substantially justified" or that other circumstances make the award unjust. *Id.* The court can also award the same sanctions if a party, a party's officer, or a person designated under Rule 30(b)(6) or 21(a)(4) fails to appear for a deposition after receiving proper notice. Fed. R. Civ. P. 37(d)(1), (3).

Rule 30(b)(6) provides a mechanism for deposing a corporation. The party requesting the deposition must name the corporation or entity as the deponent and "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The named organization then designates the person or persons who will testify on its behalf and specifies the topics to which each person will testify. *Id.* The corporation appears vicariously through the person testifying on its behalf. *Resolution T. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).

The deponent has a duty to make a good-faith effort to designate a knowledgeable representative and to prepare the

representative so he can fully, completely, and unevasively answer questions about all of the noticed topics. *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006); *Mike Hooks Dredging Co., Inc. v. Exkstein Marine Serv., Inc.*, No. 08-3945, 2011 WL 2559821, at *2 (E.D. La. June 28, 2011) (Berrigan, J.). The agent should be prepared to speak about matters reasonably available to the corporation, "whether from documents, past employees, or other sources." *Brazos*, 469 F.3d at 433. Because the person testifying speaks for the corporation, he must be able to testify to matters within the corporate knowledge of the deponent. *Mike Hooks Dredging*, No. 08-3945, 2011 WL 2559821, at *2.

When the agent lacks knowledge about relevant facts, the corporation has failed to designate an "available, knowledgeable, and readily identifiable witness." *Resolution T. Corp.*, 985 F.2d at 197. In such a case, the court treats the failure to designate as a failure to appear for deposition. *Id.* Thus, the court can sanction the corporation under Rule 37(d). *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). The court cannot automatically impose the most punishing sanction. *Id.* Instead, it must consider whether a lesser sanction could produce the desired effect. *Id.* If so, the court must impose the lesser sanction. *Id.*

## DISCUSSION

In this case, CIC noticed thirty-seven deposition topics in its Notice of FRCP 30(b)(6) Deposition of Omega Hospital. (Rec. Doc. 23-2, at 3-6.) In the first deposition, Ms. Maher testified that Omega designated her as its corporate representative for all topics except for scheduling matters. (Rec. Doc. 103-10, at 5.) To prepare for the deposition, Ms. Maher testified that she reviewed Ms. Schneck's affidavit and "the Omega objections to topics and parts of the deposition of Omega Hospital." *Id.* at 5-6. She did not review the depositions of other Omega employees or documents produced by Omega during discovery. *Id.* at 6. She did not speak to anyone about her testimony, besides Omega's counsel. *Id.* Finally, she did not review Omega's petition for damages. *Id.* at 8.

As the deposition progressed, Ms. Maher revealed her lack of knowledge about several noticed topics. As Ms. Maher did not review the relevant deposition transcripts, she could not answer questions about Omega's communications with the patient, noticed topic eight. (*See* Rec. Doc. 23-2, at 5; Rec. Doc. 103-10, at 8-9.) She was unable to respond to many questions about topic eighteen, "[t]he rates charged by you for your treatment of Andrea Y." (*See* Rec. Doc. 23-2, at 5; Rec. Doc. 103-10, at 12-13, 15, 17, 19). Ms. Maher testified that Ms. Schneck was

responsible for the charged rates, but Ms. Maher did not review Ms. Schneck's files or speak to Ms. Schneck. (Rec. Doc. 103-10, at 6, 12-13.) Counsel for Omega stated that Ms. Schneck was more qualified to testify about the charged rates, and Ms. Maher testified that Ms. Schneck possessed the relevant knowledge. *Id.* at 13, 17.

Ms. Johnson was similarly unprepared for the deposition. Ms. Johnson did not read the deposition transcripts of other Omega employees. (Rec. Doc. 103-11, at 5.) She merely reviewed the Primary Insurance Verification Sheet. *Id.* at 8. She did not speak to Ms. Schneck or anyone other than Omega's counsel. *Id.* Ms. Johnson also lacked relevant knowledge. After reviewing her topics, she claimed she could only testify about six of them. *Id.* at 4. Upon further questioning, she revealed that she could not testify as to topic fourteen, about which she previously claimed to have knowledge. *Id.* at 12-13. Also, despite claiming knowledge about topic fifteen, she could not respond to questions on that subject. *Id.* at 13.

This case resembles *Mike Hooks Dredging*, No. 08-3945, 2011 WL 2559821. In that case, the corporate deponent failed to designate an appropriate corporate representative and repeatedly delayed its deposition. *Mike Hooks Dredging*, No. 08-3945, 2011 WL 2559821, at *3. Once the deposition was underway, the

corporation's agent "frequently stated that she did not have personal knowledge of various facts, suggesting that other individuals were better suited to testify on those issues." *Id.* at *2. The Court found that the corporation failed to prepare its witness. *Id.* In awarding sanctions, the Court considered the surrounding circumstances. *Id.* at *3. It found the corporation's repeated delays were justified because of the representative's pregnancy and "normal scheduling conflicts." *Id.* Further, the representative was able to answer most questions, but she was inadequately prepared in some areas. *Id.* Thus, the Court rejected harsher sanctions and ordered the corporate party to pay costs and fees incurred in deposing the representative. *Id.*

The deposition transcripts reveal that Ms. Maher and Ms. Johnson were able to answer questions about most of the topics noticed by CIC. However, a corporate deponent has the duty to prepare its agents to answer questions about *all* noticed topics. *See Mike Hooks Dredging*, No. 08-3945, 2011 WL 2559821, at *2. Both agents were unable to testify about matters within Omega's corporate knowledge. Because the agents lacked knowledge about relevant facts, the Court treats the failure to designate an appropriate witness as a failure to appear at the deposition. *See Resolution T. Corp.*, 985 F.2d at 197. A sanction consisting of fees and expenses incurred because of the failure is

appropriate as the least restrictive sanction. *See* Fed. R. Civ. P. 37(d)(3); *Mike Hooks Dredging*, No. 08-3945, 2011 WL 2559821, at *3. Omega's proffer of Ms. Schneck was unavailing as CIC had already incurred expenses because of Omega's failure. Based on the foregoing, Omega failed to show that the Magistrate's decision was clearly erroneous.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion **(Rec. Doc. 126)** is **DENIED**

New Orleans, Louisiana this 24th day of September, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE